IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DONTE POWER,

      Plaintiff,

vs.                                     No. 20-cv-782 KG-CG

GEO GROUP, *et al*,

      Defendants.

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Civil Rights Complaint (Doc. 1). He is incarcerated, *pro se,* and proceeding *in forma pauperis*. Plaintiff contends prison officials exposed him to unsafe chemicals during a painting project. Having reviewed the matter under 28 U.S.C. § 1915(e), the Court will dismiss the Complaint but grant leave to amend.

I. Background[1]

Plaintiff is an inmate at the Lea County Correctional Facility (LCCF). (Doc. 1) at 4. In 2016 or 2017, LCCF Warden Smith commissioned a project to grind surfaces and repaint portions of the facility . *Id.* at 10. It does not appear Plaintiff joined the maintenance crew, but he was nearby during the work. On April 16, 2017, Plaintiff read the label of a paint bucket and "became aware of the ... exposure to toxins." *Id.* at 3. He collected a sample of existing paint from a door and swept the hallway for dust samples. *Id.* The following month, Plaintiff spoke with Officer Vazquez, who oversees fire safety and sanitation at LCCF. *Id.* at 2, 4. Officer Vazquez allegedly offered to conduct a hazard communication training. *Id.* at 4. He also agreed to provide N-95

---

[1] The background facts are taken from Plaintiff's complaint (Doc. 1). For the purpose of this ruling, the Court assumes Plaintiff's allegations are true.

respirators if further grinding was necessary. *Id.*

On May 5, 2017, three inmate maintenance workers used a "liquid stripper" on a door. (Doc. 1) at 4. The workers received N-95 respirator masks, but other inmates did not. *Id.* Plaintiff swept the area and collected more samples of the paint dust. *Id.* On May 9, 2017, Plaintiff filed the first of several grievances requesting Material Safety Data Sheets (MSDS) on the paint. *Id.* He also asked prison officials to inform inmates and staff regarding the exposure to toxins. *Id.* The grievance was denied, and Plaintiff mailed the dust samples to his family on May 16, 2017. *Id.*

Throughout the rest of the summer, Plaintiff shared OSHA materials with staff; filed additional grievances; collected more samples; and asked prison officials to stop the paint grinding project. (Doc. 1) at 4-5. Plaintiff's mother also emailed Warden Smith detailing Plaintiff's concerns after she obtained a MSDS from Sherwin Williams. *Id.* at 7. Prison officials declined to conduct safety classes as promised, provide their own MSDS, or notify the general population about potential toxic exposures. *Id.* at 5-6. A grievance officer stated LCCF used paints recommended by the facility architect. *Id.* at 5. Prison Director German Franco stated there are "no known significant effects or critical hazards for inhalation" of the paint dust. *Id.* at 6. On June 8, 2017, Warden Smith directed staff to search Plaintiff's property and confiscate the dust samples. *Id.* at 5. The next month, Plaintiff convinced medical staff to order an x-ray of his lungs "to document their current condition." *Id.* at 6. Plaintiff informed nurses that he noticed unexplained fatigue and shortness of breath after minimal exercise. *Id.* The nurses laughed but checked Plaintiff's oxygen level, which was at 100%. *Id.* at 7.

Between August 2 and August 4, 2017, maintenance workers removed the vent filters around the facility for cleaning. (Doc. 1) at 7. The grinding resumed on August 4, 2017, when the

workers removed rust and paint from the vents. *Id.* Plaintiff complained and "made workers quit grinding." *Id.* at 8. Plaintiff obtained a N-95 respirator mask the following day, on August 5, 2017, and it appears the project resumed. *Id.* He again complained, which prompted a visit from Warden Smith. *Id.* Plaintiff requested proper safety training and asked Warden Smith to "inform everyone of the exposure." *Id.* Warden Smith declined both requests, and Plaintiff continued to file grievances. It appears Plaintiff is concerned about the inhalation of crystalline silica dust, lead, and calcium carbonate. *Id.* at 7, 9.

Based on these facts, the Complaint raises claims under the Eighth Amendment and 42 U.S.C. § 1983. (Doc. 1) at 1, 12. Plaintiff also asserts claims under the New Mexico Air Quality Control Act, N.M.S.A. § 74-2-1, *et. seq.*; the state criminal statute defining public nuisance, N.M.S.A. § 30-8-1; the Restatement of Torts; and the federal Clean Air Act, 42 U.S.C. § 7401, *et. seq. Id.* at 1. The Complaint names five Defendants: (1) GEO Group (GEO); (2) LCCF Warden Smith; (3) Officer Short; (4) Officer Vazquez; (5) Officer Soloman. *Id.* at 2-3. The Complaint also names John Doe Defendants. *Id.* at 3. Plaintiff seeks unspecified damages and injunctive relief. *Id.* at 11-12. He also appears to seek damages on behalf of the State of New Mexico and other inmates, alleging Defendants "expose[d] 1,500+ people" to harmful chemicals at LCCF. *Id.* Plaintiff obtained leave to proceed *in forma pauperis*, and the matter is ready for initial review.

II.  Standard of Review

The Court has discretion to dismiss an *in forma pauperis* complaint at any time if the action is frivolous, malicious, or fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e). The Court may also dismiss a complaint *sua sponte* under Rule 12(b)(6) of the Federal Rules of Civil Procedure if "it is patently obvious that the plaintiff could not prevail on the facts

3

alleged, and allowing [plaintiff] an opportunity to amend [the] complaint would be futile." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (quotations omitted). The plaintiff must frame a complaint that contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Plaintiff is *pro se*, his "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall,* 935 F.2d at 1110. While *pro se* pleadings are judged by the same legal standards that apply to represented litigants, the Court can overlook the "failure to cite proper legal authority, ... confusion of various legal theories, ... poor syntax and sentence construction, or ... unfamiliarity with pleading requirements." *Id.* Further, *pro se* plaintiffs should ordinarily be given the opportunity to cure defects in the original complaint, unless amendment would be futile. *Id.* at 1109.

III. Discussion

   A. *Class Claims*

As an initial matter, Plaintiff appears to raise claims on behalf of the State and the entire LCCF population. The Complaint contains detailed allegations about the failure to conduct safety classes for inmates and staff. (Doc. 1) at 5-8. Plaintiff repeatedly asked Warden Smith to "inform everyone of the exposure" and filed grievances based on the "failure to inform everyone [about] ... the[ safety] violations." *Id.* at 8. Plaintiff also complains about grinding that took place in a housing pod on August 6, 2017, even though he received a N-95 respirator mask the day before.

4

*Id.*

To the extent Plaintiff seeks to assert class claims, such claims fail. *Pro se* plaintiffs cannot prosecute a class action lawsuit on behalf of other individuals. *See* 7A Wright & Miller, Federal Practice and Procedure: Civil § 1769.1 (citing the general rule that class representatives cannot appear *pro se*). As the Tenth Circuit explained, "the competence of a layman is clearly too limited to allow him to risk the rights of others." *Fymbo v. State Farm Fire and Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) (quoting *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)); *Amaro v. Att'y Gen. for New Mexico*, 781 Fed. App'x 693, 695 (10th Cir. 2019) (affirming dismissal of class action habeas claims). Hence, any class action claims will be dismissed. The Court will limit its review to Plaintiff's individual claims.

### B. Federal Constitutional Claims

The Complaint primarily asserts claims under 42 U.S.C. § 1983 and the Eighth Amendment. "A cause of action under section 1983 requires the deprivation of a civil right by a 'person' acting under color of state law." *McLaughlin v. Bd. of Trustees*, 215 F.3d 1168, 1172 (10th Cir. 2000). The plaintiff must allege that each government official, through the official's own individual actions, has personally violated the Constitution. *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 1998). There must also be a connection between the official conduct and the constitutional violation. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008); *Trask*, 446 F.3d at 1046.

The Eighth Amendment requires prison officials to provide humane conditions of confinement by ensuring inmates receive the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To demonstrate conditions amount to cruel and unusual punishment, the alleged deprivation must be objectively serious, and the prison official

must "have a sufficiently culpable state of mind." *Craig v. Eberly,* 164 F.3d 490, 495 (10th Cir.1998). Conditions are objectively serious when they threaten the inmate's safety or "lead to deprivations of essential food, medical care, … [or] sanitation." *Rhodes,* 452 U.S. at 348. "The 'substantial harm requirement' can [also] be met by showing 'lifelong handicap, permanent loss, or considerable pain.'" *Garrett v. Stratman,* 254 F.3d 946, 950 (10th Cir. 2001) (quotations omitted). "[T]he length of exposure to the conditions is often of prime importance" in cases challenging conditions of confinement. *Despain v. Uphoff,* 264 F.3d 965, 974 (10th Cir. 2001). "As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases." *Id.* To meet the subjective prong of the test, the Complaint must show "the official was subjectively aware of the risk,' . . . and … 'recklessly disregard[ed] that risk.'" *Wilson v. Falk,* 877 F.3d 1204, 1209 (10th Cir. 2017) (quotations omitted).

The Complaint here does not show Plaintiff suffered substantial harm because of the painting/grinding project. He reported fatigue and shortness of breath after exercise in July of 2017, but his oxygen saturation level was at 100%. (Doc. 1) at 7. Prison officials also ordered a chest x-ray to evaluate his lungs. *Id.* at 6. There is no indication the results were abnormal or that his lungs deteriorated from repeated exposures. In fact, the Complaint only points to two specific incidents involving grinding or painting. Plaintiff alleges inmate workers used a liquid paint stripper on a door on May 5, 2017. *Id.* at 4. At the time, he did not have a N-95 respirator mask, but it is not whether, or to what extent, the project involved paint dust. *Id.* The grinding continued on August 4, 2017. *Id.* at 8. However, Plaintiff "made workers quit grinding" and obtained a N-95 mask the following day. *Id.* These circumstances do not show Plaintiff was "exposed to levels

of silica [or other paint] dust ... so unreasonably high as to violate contemporary standards of decency." *Davila-Bajana v. Holohan*, 2010 WL 2757104, at *10 (W.D. Pa. June 17, 2010) (addressing crystalline silica). Accordingly, the objective component of the deliberate indifferent test is not met.

The Court is also unable to conclude any Defendant was subjectively aware of a serious risk of harm. The Complaint does not allege GEO, Officer Short, or Officer Soloman were personally involved in the alleged wrongdoing. Plaintiff appears to name those Defendants because they oversee certain safety operations at LCCF. (Doc. 1) at 2-3. Prison supervisors and entities cannot be held liable solely because they oversee a tortfeasor. They can only be liable if they promulgate an official policy that leads to the constitutional violation. *See Moya v. Garcia*, 895 F.3d 1229 (10th Cir. 2018) (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010)). There is no indication GEO, Short, or Soloman implemented a policy that caused a chemical exposure at LCCF. The Complaint states Warden "Smith created and maintained th[e] paint grinding project." (Doc. 1) at 10. Hence, the allegations fail to meet the subject prong with respect to Defendants GEO, Short, or Soloman.

As to Defendants Smith and Vazquez, Plaintiff alleges he repeatedly complained to them about "exposure to toxins." (Doc. 1) at 3-4, 6, 8. At one point, the Complaint appears to refer to the risk stemming from new buckets of Sherwin Williams paint. *Id.* at 3, 7. Elsewhere, the Complaint alludes to the risks associated with grinding old paint containing lead, crystalline silica, or calcium carbonate. *Id.* at 7, 9-10. The Court cannot discern from the Complaint what risks Plaintiff uncovered and what specific information he communicated to the Defendants. Moreover, even if Smith or Vazquez "actually knew of a substantial risk" they can "be found free from liability

7

if [they] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan,* 511 U.S. 825, 844 (1994). It appears prison officials provided Plaintiff with a N-95 respirator mask after he complained on August 4, 2017. (Doc. 1) at 8. That may have been the first grinding project in his vicinity, since the May 2017 project involved a liquid paint stripper, but it may have been the second. *Id.* at 4. Either way, the Court cannot conclude Smith or Vazquez consciously disregarded a serious risk of harm. The Section 1983 claims will be dismissed for failure to state a cognizable claim.

   *C. Remaining Claims*

   Beyond Section 1983, the Complaint raises claims under the New Mexico Air Quality Control Act, N.M.S.A. § 74-2-1, *et. seq.*; the state statute defining public nuisance, N.M.S.A. § 30-8-1; the Restatement of Torts; and the federal Clean Air Act, 42 U.S.C. § 7401, *et. seq.* (Doc. 1) at 1. None of these citations afford relief. The New Mexico Air Quality Control Act contemplates the creation of environmental boards, which enforce air quality standards. *See* N.M.S.A. § 74-2-5. The section addressing "Enforcement; compliance orders; and field citations" permits the State "secretary or director" to act. N.M.S.A. § 74-2-12. The next section permits the State to assess civil penalties. *See* N.M.S.A. § 74-2-12.1. Nothing in the statute creates a private right of action for enforcing air quality standards.

   The public nuisance statute, N.M.S.A. § 30-8-1, is a criminal code. It is not relevant to this civil action. A citation to the Restatement of Torts is too general to state any specific claim. If Plaintiff intends to assert New Mexico Torts Claims Act, N.M.S.A. 41-4-1, *et. seq.* (NMTCA), he must be more specific in his amendment. Plaintiff's final citation, 42 U.S.C. § 7401, *et. seq.*, does contemplate a citizen-suit. Section 7604 of the federal Clean Air Act permits any person to

commence a civil action where the defendant violated "an emission standard or limitation" or "an order issued by the Administrator or a State." 42 U.S.C. § 7604(a)(1). It also permits a suit "against any person who proposes to construct or constructs any new or modified emitting facility without a permit" or "who … violated …any condition of such permit." 42 U.S.C. § 7604(a)(3). The Complaint does not implicate emissions standards, an environmental order, or construction of an emitting facility. Accordingly, the claim under 42 U.S.C. § 7604 fails. Having determined the Complaint fails to state any cognizable claim, the Court will dismiss the pleading pursuant to 28 U.S.C. § 1915(e).

IV. Leave to Amend

The Tenth Circuit counsels that *pro se* litigants should be given a reasonable opportunity to "remedy defects potentially attributable to their ignorance of federal law." *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). Plaintiff may file an amended complaint within thirty (30) days of entry of this Opinion. If he declines to timely file an amended complaint or files an amended complaint that fails to state a cognizable claim, the Court will dismiss the case with prejudice and without further notice.

IT IS ORDERED:

1. Plaintiff's Civil Rights Complaint (Doc. 1) is dismissed without prejudice.

2. Plaintiff may file an amended complaint within thirty (30) days of entry of this Order.

UNITED STATES DISTRICT JUDGE

9