**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**DONTE POWER,**

**Plaintiff,**

**v.** **No. 20-cv-0782 KG/JHR**

**GEO GROUP, *et al*.,**

**Defendants.**

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENY POWER'S MOTION FOR JOINDER.**

This matter comes before me upon Defendants' Motion for Summary Judgment and Memorandum of Law [Doc. 69] and Power's Motion for Joinder and Request for Class Certification. [Doc. 74]. United States District Judge Kenneth Gonzales referred this matter to me for proposed findings and a recommended disposition. [Doc. 85]. For the reasons stated below, I recommend the Court **GRANT** Defendants' Motion for Summary Judgment because Power lacks essential elements of his claims and accordingly **DENY** Power's Motion for Joinder.

## I. BACKGROUND

### A. Factual background

Power is an inmate at the Lea County Correctional Facility (LCCF). [Doc. 15, p. 2]. Around 2016 or 2017, LCCF officials began a project to grind surfaces and repaint portions of the facility. *Id.* at 3, 4. Power was apparently not part of the maintenance crew but alleges he was nearby during the work. *See id.* at 4-7. On April 16, 2017, Power read the label of a paint bucket and "became aware of the . . . exposure to toxins." *Id.* at 3. He and inmates on the projected collected paint dust samples. *Id.* at 4. The following month, Power alleges he spoke with fire safety manager Vazquez. *Id.* at 2, 4. Officer Vazquez allegedly offered to conduct a hazard communication training and give

out N-95 respirators if the grinding continued, which Power alleges it did. *Id.* at 4. On May 9, 2017, Power filed the first of several grievances requesting Material Safety Data Sheets (MSDS) on the paint. *Id.* He also asked prison officials to inform inmates and staff regarding the exposure to toxins. *Id.* The grievance was denied, and Power mailed the dust samples to his family on May 16, 2017. *Id.*

Throughout the rest of the summer, Power continued filing grievances and asking prison officials to stop the paint grinding project. *Id.* at 4-5. Prison officials declined to conduct safety classes as promised, provide their own MSDS, or notify the general population about potential toxic exposures. *Id.* at 5-6. A grievance officer stated LCCF used paints recommended by the facility architect. *Id.* at 5. Prison Director German Franco stated there are "no known significant effects or critical hazards for inhalation" of the paint dust. *Id.* at 6. The next month, Power convinced medical staff to order an x-ray of his lungs "to document their current condition." *Id.* at 6. Power complains that he was not permitted to read the x-rays himself. *Id.*

Between August 2 and August 4, 2017, maintenance workers removed the vent filters around the facility for cleaning. *Id.* at 7. The grinding resumed on August 4, 2017, when the workers removed rust and paint from the vents from his pod. *Id.* Power complained and "made workers quit grinding." *Id.* Plaintiff obtained a N-95 respirator mask the following day from another inmate and it appears the project resumed. *Id.* He again complained, which prompted a visit from Warden Smith. *Id.* Plaintiff requested proper safety training and asked Warden Smith to "inform everyone of the exposure." *Id.* Warden Smith declined both requests, and Power continued to file grievances. It appears Power is concerned about the inhalation of crystalline silica dust, lead, and calcium carbonate. *Id.* at 7, 9. Based on these facts, the Amended Complaint again raises claims under the Eighth Amendment and 42 U.S.C. § 1983 and state law public nuisance

and negligence per se. *Id.* at 1, 9-11. The Amended Complaint names the same five Defendants as the original Complaint: (1) GEO Group (GEO); (2) LCCF Warden Smith; (3) Officer Short; (4) Officer Vazquez; (5) Officer Soloman. *Id.* at 2-3. Power still seeks unspecified damages and injunctive relief. *Id.* at 12.

**B. Procedural History**

Power filed his original *pro se* Section 1983 Prisoner Civil Rights Complaint on August 3, 2020. [Doc. 1]. U.S. District Judge Kenneth Gonzales screened the original Complaint under 28 U.S.C. Section 1915(e) and dismissed the Complaint for failure to state cognizable constitutional or state law claims. [Doc. 10]. However, Judge Gonzales granted Power leave to amend because he is a *pro se* litigant. *Id.* at 9. Power filed his Amended Verified Complaint for Damages on December 10, 2021. [Doc. 15]. Magistrate Judge Carmen Garza ordered Defendants to answer the Amended Complaint and ordered service on Defendants. [Docs. 16, 19].

Judge Garza also ordered Defendants to produce a Martinez report to investigate the underlying incidents and aid the Court in assessing whether any viable claims exist. [Doc. 28]. The voluminous Martinez reports were filed on November 18. 2022. [Docs. 42-68]. Defendants contemporaneously filed the instant Motion for Summary Judgment. [Doc. 69]. Power then filed a Motion for Joinder on February 17, 2023. [Doc. 74]. This case was reassigned to me on March 22, 2023. [Doc. 82]. Judge Gonzales referred this case to me for proposed findings and a recommended disposition on July 5, 2023. [Doc. 85].

**C. Memorandum Opinion and Order dismissing Power's original Complaint.**

The Court analyzed and dismissed all claims in the original Complaint for failure to state a cognizable claim. [Doc. 10]. Concerning the class claims, the Court found that Power's class action claims failed because a *pro se* plaintiff cannot prosecute such a lawsuit on behalf of others.

*Id.* at 5. The Court addressed Power's individual civil rights claims under Section 1983 and the Eighth Amendment, finding them similarly implausible. *Id.* at 5. The Court found that Power's Eighth Amendment claim failed to state the threshold objective and subjective elements. *Id.* at 5-6. Objectively, the Court found that Power failed to show that he suffered the required substantial harm because of the painting and grinding project. *Id.* at 6. The Court noted that Power alleged no physical damage, that the Complaint only pointed to two instances of grinding or painting, and that he obtained a mask and made workers quit grinding. *Id.* The Court concluded that Power was thus not exposed to unreasonably high levels of silica or paint dust such that modern decency standards were violated. *Id.* at 7. Additionally, the Court found that Power failed to show that any Defendant was "subjectively aware of a serious risk of harm." *Id.* The Court noted the lack of officials' personal involvement and the vague allegations of what risks Power allegedly communicated to Defendants. *Id.* The Court did not find that prison officials consciously disregarded a serious risk of harm. *Id.* at 8.

Regarding the remaining state law claims alleging violations of the New Mexico and Federal air quality acts, the Court found that those claims could not be asserted as private rights of action. *Id.* at 8, 9. The Court further dismissed the public nuisance criminal code citation and the Restatement of Torts reference as irrelevant and non-specific, respectively. *Id.* In sum, the Court dismissed the Complaint in its entirely but granted leave to amend since Power proceeds *pro se.* *Id.* at 9.

## II. <u>LEGAL STANDARD</u>

Rule 56(c) provides that summary judgment is proper if there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The standard is analogous to a directed verdict in the trial context. *Anderson v. Liberty*

*Lobby, Inc.*, 477U.S. 242, 251 (1986). The moving party may satisfy its burden of showing no genuine issue of material fact by "affirmatively disproving the nonmoving party's case" or by "directing the court's attention to the fact that the nonmoving party lacks evidence on an element of its claim." [Doc. 69, p. 4] (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)).

If the moving party chooses the latter strategy, it has the initial burden of explaining the basis of its motion "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits on file, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. After the motion is filed and adequate time for discovery has passed, Rule 56 permits a court to enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. In that context, no genuine issue of material fact exists "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

## III. <u>ANALYSIS</u>

### A. Power's Amended Complaint fails to remedy the defects in the original Complaint.

Defendants first argue that Power has not sufficiently remedied the deficiencies that Judge Gonzales identified in the original Complaint, and I agree. The *Martinez* report demonstrates the Amended Complaint's insufficiency. A *Martinez* report is an investigative report that a court orders prison officials to prepare in order to aid the court in determining if a *pro se* prisoner's allegations have any basis. *Kirk v. Winn*, 347 F. Supp. 3d 918, 921 (D.N.M. 2018). It is "designed to aid the court in fleshing out possible legal bases" from unsophisticated prisoner complaints. *Id.* It is "simply to give the trial court sufficient information for the orderly consideration of issues."

*Rider v. Werholtz*, 548 F. Supp. 1188, 1202 (D. Kan. 2008). An uncontroverted *Martinez* report may serve as a basis for dismissal. *Gallagher v. Shelton*, 587 F.3d 1063, 1067 n.7 (10th Cir. 2009).

Concerning the objective prong, Power did not plead any new facts to bolster his position that he suffered substantial harm because of the paint project. Power attempts to sow doubt by alleging that he was denied the ability to compare his own x-rays (which the facility provided) or have the nurses untrained in reading such x-rays compare them. [Doc. 15, 6]. However, Power omits that the *Martinez* report discloses the unremarkable radiological interpretations of Power's various x-rays. Also, Defendants' Motion notes that the Amended Complaint deleted allegations of harm and thus "contains no allegations whatsoever of any physical harm." [Doc. 69, p. 6].

Power also falls short on the subjective aspect of the constitutional claim, that officials were subjectively aware of the risk and recklessly disregarded it. [Doc. 10, p. 6]. This prong implicates Defendants Soloman, Vasquez, and Smith. The Amended Complaint refers to risks listed on the paint containers and disagrees with the prison's assessment that, in Power's words, "there are no known significant effects or critical hazards for inhalation." [Doc. 15, p. 6]. The Amended Complaint alleges that the safety training Warden Smith allegedly promised "never happnd" (sic) and that Power received an N-95 from an "inmate worker" because he complained. *Id.* at 7. Even construing these statements in the light most favorable to Power, they remain conclusory and fail to show that these Defendants "actually knew of a substantial risk." [Doc. 10, p. 7]. For these reasons, I find that Power's Amended Complaint fails to raise a cognizable Section 1983 claim based on the Eighth Amendment and thus recommend the Court dismiss that claim.

**B. Summary judgment is proper for Defendants on Power's Eighth Amendment claim because it lacks competent evidence of essential objective and subjective elements.**

i. Objective Element

For the same reason I also recommend the Court grant summary judgment on Eighth Amendment claim. Defendants have met their initial burden as movants to explain the basis of their Motion and identify portions of the record they believe show the absence of disputed material fact. *Celotex*, 477 U.S. at 323. After adequate discovery, Rule 56 allows the district court to enter summary judgment against the party who fails to sufficiently establish the existence of an essential element. *Id.* at 322. Summary judgment is proper in that context because the "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

To establish an Eighth Amendment violation, Power must marshal colorable evidence to sustain the objective and subjective elements. *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001). The objective element requires showing that conditions were sufficiently serious to pose a substantial risk of serious harm. *Id.*; *Garrett v. Stratman*, 254 F.3d 946, 949 (10th Cir. 2001). This means more than mere discomfort and asks whether conditions were humane in terms of food, clothing, and shelter. *DeSpain*, 264 F.3d at 971. The nature, duration, and length of exposure are especially relevant to the objective inquiry. *Id.* Anecdotal accounts of symptoms and exposure to toxins are insufficient to show that toxic exposure reached unreasonable levels and thus posed a substantial risk of serious harm. *Durham v. Hood*, 412 Fed. App'x 127, 129 (10th Cir. 2011). The Supreme Court has also indicated that the objective component requires a "scientific and statistical inquiry" to sustain. *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

The Amended Complaint fails this threshold. It only recounts isolated anecdotal incidents of exposure, appearing indirect at best. Moreover, it altogether fails to allege any physical

symptoms. The Amended Complaint remains unclear regarding the precise nature and duration of the painting and grinding to which Power was allegedly exposed. Power alleges he became aware of potential toxin exposure on April 16, 2017, when he read paint can labels. [Doc. 15, p. 3]. Power seems to allege that inmate workers grinded paint from a main hallway door in April 2017. *Id.* at 4. He then makes a new allegation that paint grinding continued sometime after May 2 but gives no further information. *Id.* He omits his previous reference in the original Complaint of workers applying liquid stripper to a door on used on May 5. *Id.*; *see* [Doc. 1, p. 4]. Reference to grinding resumes around August 2-4 when workers grinded paint from the cells in Power's pod. [Doc. 15, p. 7]. Power alleges another inmate gave him an N-95 on August 5. *Id.* Power reports that he underwent a chest x-ray on July 5 (without stating the results) but adds that neither he nor the nurses could read his x-rays due to their lack of qualification. *Id.* at 6.

In their Motion, Defendants cite undisputed *Martinez* report facts showing that Power was rarely close to the painting and grinding vicinity since his daytime job as a recreation porter took him out of the work site. [Doc. 69, p. 14] (citing UMF 12). Defendants maintain that all grinding ceased after May 1, and that Power's pod is two stories with sixteen-foot ceilings and a ventilation system to the outside. *Id.* It is undisputed that the sample of dust powder allegedly collected contained no crystalline silica particles. *Id.* (citing UMF 21). This aligns with the fact that the Safety Data Sheet indicated the paint had a minimal toxicity risk. *Id.* at 12 (citing UMF 2).

Viewing the facts in the light most favorable to Power, I find that Power has failed to objectively establish the particular exposure and risk he alleges to have suffered. Even assuming that grinding did happen in Power's pod on August 2-4, any exposure and harm arising therefrom would be mitigated by the substantial dimensions and ventilation of the pod and the short duration of the alleged grinding. Power also apparently suffered no physical harm whatsoever and

underwent a series of chest x-rays and examinations with unremarkable findings. [Doc. 69, p. 21-23]. Power thus failed to show that the grinding caused more than discomfort and enabled inhumane conditions leading to substantial harm. Therefore, I recommend that the Court enter summary judgment for Defendants because Power fails to establish the objective Eighth Amendment element that the grinding and painting posed a substantial risk of serious harm.

ii. Subjective Element

While Power's Eighth Amendment claim fails without the required objective element met, Power also fails to show the required subjective component. The subjective element requires Power to show that officials acted with deliberate indifference, which has been equated with recklessness. *DeSpain*, 264 F.3d at 971. Deliberate indifference necessitates showing that the officials knew of the facts concerning the alleged risk of him and in fact drew the inference that a substantial risk of serious harm existed. *Garrett*, 254 F.3d 949-50. Circumstantial evidence is properly considered in this subjective assessment. *Id.*

I find that Power does not advance sufficient facts to establish that Defendants GEO, Smith, Short, Soloman, and Vasquez were subjectively aware of and deliberately indifferent to a substantial risk of harm. The Court initially noted that these Defendants cannot be liable for overseeing a tortious actor where nothing indicates that they implemented a policy causing toxic exposure at the facility. [Doc. 10, p. 7]. That rule holds true in the instant analysis. The Amended Complaint contains scant specificity regarding which official Power spoke to when and on what subject. Rather, the gravamen of the Amended Complaint is Power's dissatisfaction with responses to his various grievances. Power mentions one conversation with Vazquez on May 2 and three interactions with Smith, only one of which was a conversation. [Doc. 15, p. 4, 5, 7]. The nature of these conversations does not rise to indicate deliberate indifference. The Amended Complaint

contains no allegations against Soloman. Power merely raised his concerns about potential toxins from the paint project and his desire for training and other corrective measures. *See id.*

Defendants' Motion furnishes undisputed *Martinez* report facts which forestall an inference of Defendants' subjective awareness of serious risk of harm. Defendants urge that Smith had no personal role in the project. [Doc. 69, p. 18] (citing UMF 27). Likewise, Defendants maintain that Vasquez did not supervise or control the project and only became aware of inmate exposure concerns from inmate Hunnicutt's informal complaint. *Id.* at 18-19 (citing UMF 14, 16, 18). Defendants state that in response Vasquez confirmed with Soloman that the paint being removed was not toxic and suspended the grinding out of an abundance of caution. *Id.* at 19 (citing UMF 18). Vasquez also reviewed and responded to Power's grievances, which prompted Vasquez to furnish training and a video on silica. *Id.* (citing UMF 21, 22). Defendants state that Power never relayed concerns nor requests for remedies directly to Soloman. *Id.* at 20 (citing UMF 23, 29).

Viewing the facts in the light most favorable to Power, I find that none of the allegations show recklessness or deliberate indifference on the part of prison officials. At best, Power shows that Smith and Vasquez may have been aware of facts underlying Power's belief that the painting project posed risk of toxic harm. However, Power cannot advance beyond that to show that those Defendants went on to draw the inference that a substantial risk of serious harm from the alleged exposure actually existed and chose to ignore it. The circumstantial evidence supports Smith and Vasquez reasonably responding by ensuring the paint was not toxic, largely stopping the grinding, and taking corrective training measures. At best, Power's allegations of subjective awareness could describe negligence, if anything, which fails to fulfill the subjective element of his Eighth Amendment claim. I therefore recommend that the Court grant Defendants summary judgment on

the Eighth Amendment claim because Power has failed to sufficiently establish that Defendants were deliberately indifferent to a substantial risk of serious harm.

**C. Summary judgment is proper for Defendants on Power's state law claims because of the lack of competent evidence on causation.**

Power's remaining state law claims fail to allege essential elements. The Amended Complaint asserts claims of common law public nuisance and negligence per se. [Doc. 15, p. 10, 11]. Power does not allege a factual basis for these claims beyond mentioning internal prison policies and air pollution. *Id.* at 10. Defendants contend that Power fatally fails to furnish proof of general and specific causation required to sustain a nuisance claim. [Doc. 69, p. 24] (collecting cases regarding the causation requirement in a nuisance action).

Regarding general causation, Defendant explains that Power's burden requires him to show scientific evidence of harmful exposure levels along with knowledge that Power himself was exposed to such harmful quantities. *Id.* at 24. Defendants maintain Powers has no expert nor lay proof in this regard, which also precludes his showing specific causation. *Id.* at 25. Specific causation requires showing that the suspected cause in fact caused Power's injury. *Id.* (citing cases on specific causation in toxic tort contexts). Power's specific causation fails on two levels insofar as his suspected causation is speculative and nebulous at best and his injury in nonexistent per his own Amended Complaint and the *Martinez* report. For these reasons I find that Power fails to sufficiently show an essential element of his common law nuisance claim and recommend the Court grant Defendants summary judgment on this cause of action.

I find that Power also neglects to support an essential element of his negligence per se claim with competent evidence. Power invokes internal NMCD policies as the foundation for his claim. [Doc. 15, p. 11]. Defendants assert with authority that internal corrections policies cannot be used as the basis for a negligence per se action. [Doc. 69, p. 26, 27] (explaining that internal

policies do not establish a standard of care that can be breached). Defendants further note that the lack of causation and a cognizable standard of care would defeat an ordinary negligence claim even if Power intended to bring one. *Id.* at 27. In sum, I agree that Power "cannot meet his burden of establishing a causal connection between the claimed exposure and his claimed symptoms." *Id.* I therefore find that Power fails to sufficiently allege an essential element of his negligence per se claim and recommend the Court grant Defendants summary judgment on this cause of action.

## IV. CONCLUSION & RECOMMENDATION

In sum, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment [Doc. 69] because Power fails to establish essential elements of his claims, and I in turn **RECOMMEND** the Court **DENY** Power's Motion for Joinder and Class Certification [Doc. 74] because Power's claims are not cognizable and the Court previously ruled he could not bring class claims as a *pro se* litigant.

JERRY H. RITTER
U.S. MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**