IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DONTE POWER,

    Plaintiff,

v.                                                                       No. 20-cv-0782 KG/JHR

GEO GROUP, *et al.*,

    Defendants.

**MEMORANDUM OPINION AND ORDER OVERRULING POWER'S OBJECTIONS, (DOC. 89), MOTION FOR RECONSIDERATION, (DOC. 90), AND MOTION FOR PRODUCTION OF TANGIBLE DOCUMENTS, (DOC. 96)**

This matter is before the Court on Power's Objections, (Doc. 89), and Motion to Reconsider Judgement and Order. (Doc. 90). Power asks the Court to reconsider its Order Adopting the Magistrate Judge's Proposed Findings and Recommended Disposition, (Doc. 87), and Judgment, (Doc. 88), which granted Defendants' Motion for Summary Judgment, (Doc. 69). The Motion to Reconsider requests the Court consider Power's Objections to the Proposed Findings and Recommended Disposition (PF&RD), which he filed concurrently with the Motion. (Doc. 89). The Geo Defendants filed a response to the Objections, (Doc. 91), and Power replied, (Doc. 92). Defendants also filed several supplemental responses. (Docs. 93, 94, 95). Power then filed a Motion for Production of Tangible Documents Based on Rule 34 (Doc. 96). Defendants did not respond to that motion. For the reasons explained below, the Court will OVERRULE the Objections and DENY the Motion to Reconsider and DENY the Motion for Production of Tangible Documents. The Judgment and Order stands.

I. BACKGROUND

   A. *Power's Objections to the PF&RD*

The Court will summarize the Objections, which serve as the basis for the Motion for Reconsideration. *See* (Doc. 89). After *Martinez* reports were produced, the PF&RD recommended finding that Power failed to establish the objective and subjective essential elements of his Eighth Amendment claim challenging conditions of confinement based on alleged silica exposure from a painting and grinding project in the prison. *See* (Doc. 86). The PF&RD thus recommended granting summary judgment in favor of Defendants. *Id.* Power objects to these findings.

At the outset, Power complains that he lacks documents critical to proving his case. He objects that the *Martinez* report did not include the safety data sheets (which he calls "MSDS" sheets) required for paint to enter the facility nor the results of his most recent chest x-ray and thyroid biopsy. *Id.* at 2. To that end, Power contends that "a proper clinical evaluation [by an outside provider] is of critical importance to this pending litigation." *Id.*

Power first objects to the PF&RD's objective element finding that he failed to establish that a substantial risk of serious harm existed because of involuntary exposure to toxic substances. *Id.* at 2. Power cites the paint can warning labels and poses several rhetorical questions asking why Sherwin-William includes "stern" disclaimers if the paint was safe to "inhale and ingest." *Id.* at 2–3. He then cites the OSHA standards for crystalline silica exposure and queries why Defendants do not take the government warnings seriously. *Id.* at 3–4. He suggests that grinding pod doors for nine months (by his count) meets the definition of long-term exposure. *Id.* at 4. In that regard, Power disputes Defendants' contention that the grinding was

completed in two days. *Id.* at 5. He believes discovery must take place to resolve these issues. *Id.*

Power next says that absent physical injury, the objective standard only requires that the exposure posed an "unreasonable risk of serious damage to his future health." *Id.* at 5 (internal citation omitted). He advances the relevant inquiries as (1) the "seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure," and (2) "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such risk." *Id.* (internal citation omitted).

Power argues that his case meets these objective element considerations. He states that his need for an independent pulmonology exam means that the potential harm is serious enough to have likely caused the alleged lung problems. *Id.* at 5–6 ("A senior technical services specialist Jim Taylor…technician trainer for Honeywell safety products indicated to Plaintiff that he would need to consult a medical professional specializing in pulmonary medicine regarding his health concerns"). However, Power primarily relies on the second consideration regarding contemporary decency standards. *Id.* at 6 ("So the question turns to if you were exposed to toxins classified as immediately dangerous…an[d] you had to continuously clean dust particles that fall on the tables you eat at and the environment you live in…would you find it acceptable? Would you allow your family or children to eat, live and play in that kind of environment?"). Power also objects that Defendants' failure to test air samples during the grinding violates federal and state air quality standards which renders the facility "immediately dangerous to life and health." *Id.* at 6–7.

3

Power next objects that his claim also meets the subjective element because "by virtue of the Defendants [sic] job titles, they were required to sign off on and approve all caustic materials." *Id.* Because these approvals were not included in the *Martinez* report, he argues, Defendants reveal their "knowledge and disregard for the health and safety" of the inmates. *Id.* at 7–8. To that end, Power again requests the paint approvals, maintenance and training records, and his medical scan results. *Id.* at 8. He also attaches several documents to the Objections, largely consisting of OSHA guidelines, information relating to thyroid nodules, and NMCD procedures concerning hazardous material use. *Id.* at 10–25.

B. *Defendants' Response*

Defendants first respond that the objections are meritless because they fail to address the crucial deficiencies identified in the PF&RD: no evidence shows that Power suffered substantial harm or that Defendants had actual knowledge of a serious risk which they disregarded. (Doc. 91) at 3. Defendants call to mind the undisputed facts the PF&RD relied upon, such as the tall ceiling dimensions and Power's lack of proximity to the painting/grinding. *Id.* They further point out that the policy Power says requires official signature and approval for paint is inapplicable to the project here. *Id.* at 4 (the policy applies to the Corrections Industries Division). Defendants moreover note that Power never disputed the location or size of his pod, the work location (including the ventilation system), or receiving a respirator after complaining. *Id.*

Defendants argue Power still fails to establish the objective element of his Eighth Amendment claim. *Id.* They describe the undisputed medical records the PF&RD cited which showed no chest abnormalities and note that the objections rely on testing without results. *Id.* at 4–5. They express doubt that any new results would yield any pertinent information and further critique Power's attachments discussing thyroid nodules and cancer as lacking reference

4

to silica exposure. *Id.* Defendants also observe that the manufacturer warnings and OSHA information Power attaches concern long-term, 8-hour workday exposure which is not the case here. *Id.* at 5–6. Defendants finally discount the objections based on air quality violations as non-mandatory and irrelevant. *Id.* at 6. In closing regarding the objective element, Defendants note that Power "has never presented any evidence of any scientific or statistical inquiry into the potential harm cause[d] by his actual exposure to crystalline silica" nor the amount, rate, or duration of alleged exposure. *Id.*

Defendants also argue that Power still fails to establish the subjective element of his Eighth Amendment claim. *Id.* They note that Power only objected to this element by arguing that Defendants' alleged failure to produce the signed safety sheets shows that they knew and disregarded health and safety risks. *Id.* However, Defendants respond that "the issue of the SDS sheets was addressed in [undisputed material fact] 4 and Plaintiff has no evidence to the contrary." *Id.* They again state that the policy on approval disclosures cited by Power does not apply to this project. *Id.*

Defendants finally address Power's state law claims. *Id.* at 7. Although Power does not specifically object to the PF&RD's state law analysis, Defendants explain that Power's allegation of a New Mexico Air Quality Control Act violation does "not meet the substance of Judge Ritter's proposed findings" and thus fails to warrant reconsideration. Defendants ask the Court to overrule Power's objections and enter judgment in their favor. *Id.*

C. *Power's Reply*

Power's reply again requests records and emphasizes Defendants' lack of "duty of care" in training staff and inmates: "If the Defendants cannot perform their job duties in accordance with NMCD policies. [sic] Expecting them to properly navigate federal, state, local, and ACA

standards…is a tall order." (Doc. 92) at 2–4. He reasserts that: (1) an expert "qualified to speak on the effects [of silica exposure] on the respiratory system" is necessary, (2) Defendants ignore the calcium carbonate and "rust" inhalation risk, and (3) OSHA parameters contemplate worker protection in this circumstance. *Id.* at 5–6. He thus requests denial of summary judgment. *Id.* at 7.

*D. Defendants' Supplemental Responses and Power's Motion for Production*

Defendants filed a supplemental response after the reply. (Doc. 93). This supplemental response explains the sequence of releases sent to Power in order to obtain his medical records. *Id.* at 2. Defendants subsequently filed Power's medical records. (Docs. 94, 95). Thereafter, Power filed a Motion for Production of Tangible Documents renewing his request for the same documents he has requested throughout: (1) the paint "MSDS" sheets, (2) paint product approvals "in accordance with NMCD policy," (3) color copies of his chest x-rays, (4) the lab report on his thyroid biopsy, (5) maintenance logs and work requests for the project, (6) Defendants' training certificates, and (7) his 2023 chest x-ray. (Doc. 96). Defendants did not respond.

II.  Discussion

The Court will address the Motion for Reconsideration and the objections under separate analyses below.

    *A. MOTION FOR RECONSIDERATION*

        *1. Legal Standards*

Because Power's objections were filed after the PF&RD's 14-day objection deadline, the Court will first treat them as a Motion for Reconsideration in accordance with Power's motion requesting such relief. (Doc. 90). A motion for reconsideration seeks relief under Rule 60(b)(1):

"On motion and just terms, the court may relieve a party or the legal representative from a final judgment, order, or proceeding for…mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). This provision is not intended to serve as a substitute to an appeal. *Amaro v. State of New Mexico*, 2021 WL 1109223, at *1 (D.N.M.) (citing *Morris v. Adams-Millis Corp.*, 758 F.2d 1352, 1356–57) (10th. Cir. 1985)). Accordingly, mistake and inadvertence allow for reconsideration of a judgment only when: "(1) a party has made an excusable litigation mistake or an attorney in the litigation has acted without authority from a party, or (2) where the judge has made a substantive mistake of law or fact in the final judgment or order." *Id.* (citations omitted). Notably, a party may not reargue a previously addressed issue when "reargument merely advances new arguments or supporting facts which were available for presentation at the time of the original argument. *Id.* at *2 (citing *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991)).

### 2. *Power's Motion for Reconsideration fails to meet the standard for relief.*

Power urges the Court to do precisely what Rule 60(b) forbids. The plain language of Rule 60(b) allows a party to correct its own unintended mistake, not the court's mistake. *See Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 577 (10th Cir. 1996). Most of the Motion to Reconsider incorporates his objections to the PF&RD by reference and argues that he complied with the "mailbox rule" such that his objections are timely. (Doc. 90). The Court will address the substantive objections separately.

What remains is Power's request for the Court to order production of his biopsy results and other documents he requests. *Id.* This request does not fall in any category for proper Rule 60(b) relief. Power does not allege that he made a mistake which he now wishes to correct, nor does he aver that the Court made a substantive factual or legal error. Rather, he advances that

7

apprehension of certain facts believed to be contained in the outstanding documents would change the Court's previous analysis. His argument that undisclosed documents fatally undermine the Court's legal conclusions is speculative and conclusory. For example, assuming Power's thyroid biopsy showed malignant cells, more would be needed to even suggest the necessary causal nexus to facility operations. Power's medical records indicate other comorbidities which may be contributing or causative agents of thyroid or lung conditions. In sum, Rule 60(b) does not by itself elevate possibility to persuasion. *See* Fed. R. Civ. P. 60(b)(1). The motion is denied.

### B. POWER'S OBJECTIONS TO THE PF&RD

#### 1. Legal Standards

The Court referred the case to Magistrate Judge Ritter pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. 85). When resolving objections to a magistrate judge's report and recommendation, the district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. A party's objections to the report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Moreover, "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996).

In adopting a report and recommendation, the district court need not make any specific findings; the district court must merely conduct a *de novo* review of the record. *Garcia v. City of Albuquerque*, 232 F.3d 760, 766 (10th Cir. 2000). The district court is presumed to know that *de novo* review is required; consequently, a brief order expressly stating the court conducted *de novo* review is sufficient. *Northington v. Marin*, 102 F.3d 1564, 1570 (10th Cir. 1996) (internal

citation omitted). Express references to *de novo* review in its order indicate the district court properly considered the relevant portions of the record, absent some clear indication otherwise. *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8.F.3d 722, 724 (10th Cir. 1993).

> 2. *Power's objections are overruled to the extent they were properly preserved for de novo review.*

Because Power is pro se and incarcerated, the Court will entertain his argument that his objections were timely submitted to the prison mail on September 18, 2024, (the day objections were due) but that postage issues delayed delivery. *See* (Doc. 90). However, based on a *de novo* review of the record, the Court finds Power's objections fail to meet the requisite legal standard.

> a. *The Court overrules Power's objections to the PF&RD regarding the objective element of his Eighth Amendment claim.*

Power first objects to the findings regarding the objective element of his claim. (Doc. 89) at 2–7. As Judge Ritter explained in the PF&RD, Power must meet both subjective and objective elements to state an Eighth Amendment claim. (Doc. 86) at 7 (citing *DeSpain v. Uphoff*, 254 F.3d 965, 971 (10th Cir. 2001)). The objective element requires a showing that conditions were sufficiently serious to pose a serious risk of harm, exceeding anecdotal accounts of discomfort or exposure. *Id.*

Power's objections to the objective prong analysis are unpersuasive. Judge Ritter found that Power failed to meet this objective threshold because Power "recounts isolated anecdotal incidents of exposure, appearing indirect at best" absent any "physical symptoms." (Doc. 86) at 7, 8. Power repeats that he needs an independent pulmonary exam in order demonstrate sufficient seriousness. (Doc. 89) at 5–6. He does not dispute or otherwise address his clear chest x-rays. At the outset, the Court finds this objection insufficiently specific, and thus improper, because it does not address specific content in the PF&RD. In addition, there remains no basis to

believe that an independent examination would yield material information that would create a genuine fact issue when no prior pulmonary exams have shown abnormalities. *See* (Doc. 33) (showing Power has previously requested an independent exam).

Second, Power focuses on a sub-consideration of the objective component which requires a prisoner to show that the unwilling exposure violates contemporary standards of decency. *See Dexter v. Ford Motor Co.*, 92 Fed. Appx 637, 642 (2004) ("[T]he prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate"). His approach avoids addressing the lack of demonstrable harm. He posits various rhetorical questions with provocative framing. (Doc. 89) at 6 ("Would you allow your family or children to eat, live and play in that kind of environment?"). Rhetorical questions are not specific objections to the PF&RD findings. Power does not point to evidence that he suffered exposure to unreasonably high levels of particulate matter from the painting/grinding project that society would find intolerable. While the dust from the project may be irritating or disruptive, Power does not have a constitutional right to a particulate-free facility. *See Watson Corr. Corp. of America*, 2002 WL 35650092, at *4 (D.N.M.) (internal citations omitted) (denying an Eighth Amendment claim based on secondhand smoke exposure).

Power's final objection—that Defendants violated state and federal air quality standards by failing to test his samples—recycles a prior argument, which the PF&RD explained was inapplicable to his facts. In sum, upon *de novo* review, Power does not present competent evidence of a serious risk of harm nor a violation of contemporary decency standards. The objections with respect to the objective element are overruled.

    b. *The Court overrules Power's objections to the PF&RD analysis regarding the subjective element of his Eighth Amendment claim.*

Power's objections to findings on the subjective prong similarly fail. The subjective prong of an Eighth Amendment claim requires showing that prison officials acted with deliberate indifference. This requires demonstrating that officials knew of the facts surrounding the alleged risk of harm, concluded from those facts that a substantial risk of serious harm existed, and ignored it. (Doc. 86) at 9 (citing *DeSpain*, 264 F.3d at 971). The PF&RD found that Power failed to proffer competent evidence to establish deliberate indifference and explained that his sporadic conversations with various officials did not suffice. *Id.* At best, the PF&RD reasoned, Defendants may have known some underlying facts. *Id.* at 10. Critically, however, Power did not show that they inferred and ignored a substantial risk of serious harm. *Id.*

Power proposes that the Court adopt inferences from a lack of information. He urges that the absence of signed approval forms in the *Martinez* report shows Defendants knew the risks to inmates from alleged toxic materials and consciously ignored them. His approach is problematic for three reasons. First, it does not specifically object to the PF&RD's findings or analysis. Second, it is entirely speculative. And third, it is misleading because Defendants produced the relevant safety data sheets in the *Martinez* report. (Doc. 41) at 4 (Safety data sheets produced in Exhibit M, Bates stamped GEO 01122–01150). Power's disagreement with the content of those sheets does not make them objectionable. Power presents no other cogent evidence or argument showing the Defendants had knowledge of a substantial risk of serious harm and chose to disregard it. The objections with respect to the subjective element are thus overruled.

C. *MOTION FOR PRODUCTION OF TANGIBLE DOCUMENTS*

Power filed a motion again requesting the documents he has requested throughout: (1) "MSDS on paints," (2) "product approvals on paints" per "NMCD Policy," (3) color copies of his "chest x-rays taken at LCCF," (4) the June 29, 2023, "Sandya (sic) surgical biopsy lab

11

report," (5) "maintenance logs and work requests for paint grinding project," (6) Defendants' "training and certifications" up to 2018, and (7) the "2023 chest x-ray report." (Doc. 96) at 1. He attached an NMCD request form showing he has requested his biopsy results. *Id.* at 2. Defendants did not respond.

The Court denies Power's request, which is essentially a request for more discovery following disclosure of the *Martinez* report and subsequent medical records. *See* (Docs. 41–68, 94, 95). There is no indication that these documents would yield any "smoking gun" evidence. The Court therefore denies Power's Motion for Production.

III.   CONCLUSION

For the foregoing reasons, upon considering the parties' arguments and conducting a *de novo* review of the record, the PF&RD, (Doc. 86), and the Objections, (Doc. 89), the Court OVERRULES the Objections and ADOPTS the PF&RD in full; the Court further DENIES Power's Motion for Reconsideration, (Doc. 90), and Motion for Production of Tangible Documents, (Doc. 96).

IT IS THEREFORE ORDERED:

1. Power's Objections, (Doc. 89), are OVERRULED and summary judgment in favor of Defendants, (Doc. 69), is GRANTED;
2. Power's Motion to Reconsider, (Doc. 90), is DENIED; and
3. Power's Motion for Production of Tangible Documents, (Doc. 96), is DENIED.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE